## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:02CR334(PCD) |
| | : | |
| v. | : | |
| | : | |
| HERMAN JAMES | : | November 1, 2006 |

### GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

On January 9, 2004, in the midst of jury selection, the defendant, Herman James, pleaded guilty to Counts One, Two, and Three of the Second Superseding Indictment in this case. Counts One and Two charge him with counterfeiting, in violation of 18 U.S.C. § 472; Count Three charges him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On November 18, 2004, the Court sentenced the defendant principally to a term of imprisonment of 66 months. The Second Circuit has remanded this case for resentencing and the defendant is scheduled to appear before this Court on November 6, 2006.

## I.    THE FIRST SENTENCING

In connection with the defendant's sentencing, the Probation Office prepared a Presentence Report ("PSR"), which included certain recommendations regarding the application of the Sentencing Guidelines to this case. The base offense level for Counts One and Two, which were grouped, was Level 9 under Sentencing Guidelines Section 2B5.1. *See* PSR at ¶ 44. This was in accord with the Guidelines calculation contained in the plea agreement. The base offense level for Count Three was Level 20, under Section 2K2.1(a)(4)(A). *See* PSR at ¶ 45. Because the offense level for the group comprising Counts One and Two was more than eight levels less serious than the offense level for Count Three, there was no increase for the combined offense level. *See* U.S.S.G. § 3D1.4(c).

The Probation Office recommended a two-level upward adjustment for obstruction of justice, pursuant to Section 3C1.1 of the Guidelines. *See* PSR at ¶ 49. The Government concurred with this recommendation. The Probation Office also recommended that the Court withhold the three-level downward adjustment for acceptance of responsibility because James falsely denied and frivolously contested relevant conduct. *See* PSR at ¶ 51. The Government agreed with the Probation Office and did not recommend to the Court a downward adjustment for acceptance of responsibility. After a contested sentencing, the Court accepted these recommendations and calculated the final offense level to be Level 22 (Base Offense Level of 20, plus two levels for obstruction and no decrease for acceptance). Because the defendant was in Criminal History Category IV, his Guidelines range was 63 to 78 months. *See* PSR at ¶ 60.

In calculating the Guidelines, the Court had to make factual findings as to whether the defendant obstructed justice and whether he accepted responsibility for the offenses of conviction. To assist the Court in its fact-finding, the Government prepared a detailed memorandum, including documentary exhibits and consensual recordings, summarizing a lengthy criminal investigation. Before sentencing, the Government submitted to the Court, under seal and with the Court's express permission, the grand jury transcripts of two witnesses whose testimony could potentially assist the Court in its fact-finding. These transcripts had been disclosed to the defendant approximately one year earlier in the course of pre-trial discovery. The two witnesses would have been the Government's principal witnesses at trial. One of them was an eyewitness to the offenses to which the defendant pled guilty. The other witness -- a confidant of the defendant in the federal detention facility where the defendant was detained immediately after his arrest in this case -- would have testified about the defendant's various

admissions of criminal conduct and his subsequent attempts to obstruct justice by visiting harm upon Nicole Diaz or her then eight-year old son. *See* Transcript of Sentencing Hearing at 68.

In imposing a sentence of 66 months, which was within the Guidelines range of 63 to 78 months, the Court expressly stated that it would have imposed the same sentence if the Guidelines were not mandatory.

## II.     THE *BOOKER/FAGANS* REMAND

On June 29, 2005, the Second Circuit remanded this case for resentencing, pursuant to *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Fagans*, 406 F.3d 138, 142 (2d Cir. 2005). *See United States v. James*, No. 04-6336-cr (2d Cir. June 29, 2005). On September 7, 2006, the defendant appeared before the Court for resentencing. Although the Court initially expressed its inclination simply to reimpose the sentence of 66 months, the parties and the Court finally agreed that the best course for a *Fagans* remand would be for the defendant to move for reconsideration of the Court's Guidelines calculation. On September 26, 2006, the defendant filed his motion for reconsideration. It is believed that the defendant will seek to revisit the Court's findings of fact regarding (1) the obstruction of justice enhancement and (2) the denial of a downward adjustment for acceptance of responsibility. Specifically, defense counsel has indicated that the defendant intends to argue that he should have an opportunity to cross-examine the two Government witnesses whose grand jury testimony was received by the Court, but who did not appear as live witnesses at the sentencing hearing.

III.    **THE COURT SHOULD GRANT THE DEFENDANT'S MOTION FOR RECONSIDERATION**

The Government agrees that the Court should reconsider whether it would have imposed a different sentence in light of *Booker* and whether there is any reason to relitigate the contested factual issues upon which the Court's Guidelines calculation was based.  The Government does not oppose such a reconsideration.  However, for the reasons set forth below, the Government submits that the Court, having reconsidered these issues, should adhere to its original Guidelines calculation and its original sentence.

IV.    **THERE IS NO REASON TO DISTURB THE COURT'S ORIGINAL FINDINGS OF FACT AND THE RESULTING SENTENCE**

The defendant seeks reconsideration for the purpose of determining whether the Court would have imposed the same sentence in light of the Supreme Court's decision in *Booker*.  As stated above, the Government does not oppose reconsideration for this limited purpose, with the understanding that the Court would reconsider the Section 3553(a) factors as they apply to this defendant and in light of the Court's previous findings of fact.  However, it appears that the defendant also seeks to relitigate the two contested factual issues as to which the Court has already made its findings: (1) whether the facts support an upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1; and (2) whether the defendant accepted responsibility for his offense in a manner that would entitle him to a downward adjustment under U.S.S.G. § 3E1.1. The Court has already received extensive evidence relating to these two issues, has weighed that evidence, and has made findings of fact unfavorable to the defendant.  Even though the case has been remanded for resentencing, there is no legal or factual basis for relitigating these two issues.

- 4 -

A.    <u>The Law of the Case Prohibits Further Factual Inquiry</u>

The law of the case doctrine has "two branches."  *United States v. Quintieri*, 306 F.3d

1217, 1225 (2d Cir. 2002).  "The first requires a trial court to follow an appellate court's previous

ruling on an issue in the same case.  This is the so-called 'mandate rule.'"  *Id.* (citation omitted).

"The mandate rule 'compels compliance on remand with the dictates of the superior court and

foreclose relitigation of issues expressly or impliedly decided by the appellate court.'" *United*

*States v. Bryce*, 287 F.3d 249, 252 (2d Cir. 2002) (quoting *United States v. Zvi*, 242 F.3d 89, 95

(2d Cir. 2001) (quoting, in turn, *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993))) (emphasis

deleted).

"The second and more flexible branch is implicated when a court reconsiders its own

ruling on an issue *in the absence of an intervening ruling on the issue by a higher court*.  It holds

'that when a court has ruled on an issue, that decision should generally be adhered to by that

court in subsequent stages in the same case,' unless 'cogent' and 'compelling' reasons militate

otherwise.'" *Quintieri*, 306 F.3d at 1225 (quoting *United States v. Uccio*, 940 F.2d 753, 757 (2d

Cir. 1991), and *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)) (citations omitted)

(emphasis added).  "The major grounds justifying reconsideration are an intervening change of

controlling law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice."  *Tenzer*, 213 F.3d at 39 (citations and internal quotation marks omitted).

"[T]his branch of the doctrine, while it informs the court's discretion, 'does not limit the

tribunal's power.'" *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (quoting *Arizona v.*

*California*, 460 U.S. 605, 618 (1983)).  A court may therefore revisit an earlier, unreviewed,

decision of its own so long as it has a valid reason for doing so, and provides the opposing party

- 5 -

"sufficient notice and an opportunity to be heard." *Uccio*, 940 F.2d at 759 (finding that district court's realization that it had relied on faulty legal interpretation of a sentencing guideline was valid reason for revisiting earlier ruling).

The reason why further reconsideration should be precluded in this situation, the Government submits, lies with the concept of finality, which is the core concept animating the law of the case doctrine. As the Second Circuit has explained:

> Very high among the interests in our jurisprudential system is that of finality of judgments. It has become almost a commonplace to say that litigation must end somewhere, and we reiterate our firm belief that courts should not encourage the reopening of final judgments or casually permit the relitigation of litigated issues out of a friendliness to claims of unfortunate failures to put in one's best case.

*United States v. Cirami*, 563 F.2d 26, 33 (2d Cir. 1977). The *Cirami* court went on to find that the systemic interest in finality in the case at hand was outweighed by one party's presentation of compelling, newly available evidence -- a traditional exception to the mandate rule. The point here is that a given issue should not be litigated before a trial court, yet still remain open to relitigation. Once this Court has made a definitive judgment about the obstruction and acceptance of responsibility issues -- as framed by a given set of legal rules and a given set of facts -- those issues should be foreclosed from further litigation. To do otherwise would invite open-ended relitigation on remand of any issue that involves a factual component -- that is, any issue which is reviewable for clear error, and which therefore might hypothetically admit of more than one possible permissible conclusion in the first instance. In sum, the Court's factual findings regarding obstruction of justice and acceptance of responsibility are the law of the case and there is no compelling reason to disturb these findings.

B.    <u>There is No Reason to Relitigate the Contested Factual Issues</u>

The Government is not aware of any new evidence relating to the contested factual issues that would warrant relitigating these issues.  To the extent that the defendant now objects to the Court's receipt of hearsay evidence (grand jury transcripts of two witnesses) upon which it may have based its findings of fact, there are three facts that the Court should consider.

First, the transcripts were no less hearsay evidence in November 2004 when they were first offered by the Government for *in camera* review by the Court.  At that time, the defendant did not oppose this offer of proof by the Government.  It is likely that he consented to the Government's *in camera* submission of the grand jury transcripts because the live testimony of the two witnesses in question would have been much more damaging to his cause.  Indeed, the defendant probably pled guilty in the first instance because he knew that the prospective trial testimony of these two witnesses would be devastating to any claim of innocence.  In any event, the defendant could have requested the opportunity to confront these witnesses back in November 2004, at the first sentencing.  Either the defendant or his attorney made a reasonable judgment at the time not to do so.  There is no reason to turn back the clock and give the defendant another opportunity to confront these witnesses.

Second, both the Supreme Court and the Second Circuit "have consistently held that the right of confrontation does not apply to the sentencing context and does not prohibit the consideration of hearsay testimony in sentencing procedures."  *United States v. Martinez*, 413 F.3d 239, 242 (2d Cir. 2005).  There is no reason to disregard that rule in the present case.

Third, bringing these two witnesses to Court at this stage of the proceedings would put the Government at an unfair disadvantage.  The events as to which they would testify and upon

- 7 -

which they would be cross-examined happened four years ago.  With the passage of time, they may have forgotten details of their interaction with the defendant.  In addition, knowing the defendant's history of violence, one of the witnesses (who was very fearful of him in the first place) may be reluctant to provide testimony that is unfavorable to the defendant in light of the fact that he will be released from prison within a year and a half, regardless of whether the Court imposes a more lenient sentence.  The other witness remains in federal custody and may also fear for his safety if he were to testify against the defendant.  It should be noted that the Government, at a significant expense, brought both of these witnesses to New Haven in January 2004 to testify at the defendant's trial.  The Government is not aware of any reason to believe that their trial testimony, even under cross-examination, would have been materially different from what they told the grand jury.

## V.    THERE IS NON-HEARSAY EVIDENCE SUPPORTING THE COURT'S FACTUAL FINDINGS

Even if the Court were inclined to give the defendant an opportunity to cross-examine the two witnesses whose grand jury testimony was received by the Court, there is no need to do so in this case because there is ample non-hearsay evidence supporting the Court's factual findings.

### A.    Acceptance of Responsibility

The Court's finding that the defendant had not accepted responsibility for the offenses of conviction was based in large part upon the defendant's own statements to the Probation Officer. These statements reflected not only a lack of contrition and remorse, but, in the Court's words, an attempt to "play[] games with the system and with the system's agent."  *See* Transcript of Sentencing Hearing at 43.  The Court further observed that

the person I'm dealing with is, by virtue of his conduct in dealing with the
probation officer, demonstrates to me that this is a person who is not fully
cognizant of the obligations to comport with the law, and somebody who thinks
that they can jerk an agent around a little bit, as far as the facts are concerned, and
enhance their position somewhat, under the circumstances.

*See* Transcript of Sentencing Hearing at 47.  These highly unfavorable observations are

independent of the testimony of either of the two witnesses whom the defendant now wishes to

confront, and are sufficient to support the Court's refusal to grant a downward adjustment for

acceptance of responsibility.

     B.    <u>Obstruction of Justice.</u>

     The Government identified at least six discrete instances in which the defendant tried to

obstruct justice.  These are:

     1.    On August 30, 2002, when James falsely told Assistant State's Attorney
David Smith that the gun found at the Norwich Inn & Spa did not belong
to him and induced Diaz to make a false statement to Assistant State's
Attorney Smith in order to exculpate himself.

     2.    On or about November 4, 2002, when James told Diaz "If I find out you
snitched on me, I will f___king kill you."

     3.    On or about December 4 to 14, 2002, when James solicited Manns and
Span to arrange for an assault on Diaz in order to coerce Diaz to recant the
inculpatory information she had provided to the Government in this
prosecution.

     4.    On or about December 4 to 14, 2002, when James solicited Manns and
Span to arrange for an assault on Diaz' eight-year old son in order to

coerce Diaz to recant the inculpatory information she had provided to the
Government in this prosecution.

5.      In December, 2002 and January, 2003, when James solicited Manns and
        Span to harass and threaten Special Agent Coller by making harassing and
        threatening anonymous telephone calls to him; by putting a bullet in
        Special Agent Coller's mailbox; and by pouring blood on the windshield
        of Special Agent Coller's vehicle.

6.      On January 18, 2003, when James asked one of his friends by telephone to
        confront Diaz and tell her to recant her statements to federal law
        enforcement officers.

While it is true that the grand jury testimony of the two witnesses was relevant to most of
these incidents, it is also true that the Government provided the Court with substantial
independent evidence corroborating that testimony, including recorded messages left by the
defendant on Nicole Diaz's cell phone, threatening her and her family with physical violence.
Furthermore, the evidence supporting one of the obstructive acts (item 6, above) consists of the
defendant's own recorded conversation with a friend, whom the defendant tried to recruit to
confront Diaz and tell her to recant her incriminating statements to federal law enforcement
officers.  This recording, standing alone, would be sufficient to support the two-level
enhancement for obstruction of justice.

## VI.    THE SECTION 3553(a) FACTORS WEIGH HEAVILY AGAINST THE DEFENDANT

To the extent that the defendant seeks to persuade the Court to impose a more lenient sentence based on the Section 3553(a) factors, the Government submits that no further hearing is necessary in this regard.  As a preliminary matter, the Court already expressly indicated at the first sentencing that it would have imposed the same sentence even if the Guidelines were not mandatory.  In any event, this defendant's lengthy criminal record, along with the record in this case, reveals a man with a long history of criminal activity, including violent crime, gang activity, guns, drugs, and economic crimes.  *See* PSR at ¶¶ 53 - 62.  His numerous encounters with state and federal law enforcement over the course of more than 11 years have not curbed his inclination to criminal activity; rather, he seems to have concluded that the only thing wrong with crime is getting caught.  Accordingly, he was careful to insulate himself from direct involvement in criminal activity, where possible, by using others to commit crimes for him (*e.g.*, Diaz, Manns, and Span).  When arrested on the federal warrant in this case, he responded not with remorse or regret for his criminal actions, but rather with several attempts to obstruct justice by soliciting others to commit a vicious assault on Diaz or her eight-year old son and to threaten and harass a federal law enforcement officer.  His pattern of deceitful conduct continued even after his guilty plea when he lied to the Probation Office concerning the nature and circumstances of the offense to which he pleaded guilty.

Over the course of his long criminal career, the defendant has been given numerous opportunities to reform himself.  He has spent most of the past 15 years on federal supervised release, on probation, under conditional discharge, or in state or federal prison.  By his own

actions, however, he has proven that he is unwilling to conform his behavior to the norms of society. In light of this, the Government submits that the defendant is immune to rehabilitation and that the most effective deterrent to his further criminal activity is a lengthy term of imprisonment.

### CONCLUSION

For the foregoing reasons, the Government does not oppose the defendant's motion for reconsideration. However, the Government does oppose any request to relitigate factual issues that have already been decided by the Court. Accordingly, the Government respectfully submits that, upon reconsideration, the Court adhere to its previous findings of fact and the resulting Guidelines calculation (Level 22, Criminal History Category IV), and impose the same sentence of 66 months.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


 /s/
JOHN A. MARRELLA
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. CT19473
157 Church Street
New Haven, CT 06510
Telephone: (203) 821-3700

## **CERTIFICATION**

This is to certify that a copy of the foregoing Memorandum has been sent by fax and U.S. Mail, this 1st day of November, 2006, to:

Jonathan Einhorn, Esquire
412 Orange Street
New Haven, CT 06511
Fax: (203) 782-1721

Mr. Brian J. Topor
United States Probation Office
United States Courthouse
450 Main Street
Hartford, CT  06103
Fax: (860) 240-2620

                                         /s/
                                      JOHN A. MARRELLA
                                      ASSISTANT UNITED STATES ATTORNEY